UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOHN JOWERS III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:26-cv-00126-Z-BZ |
| | § | |
| NICHOLAS GRANT and ANTONIO GUZMAN, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Sprouse Shrader Smith PLLC
Blair Saylor Oscarsson, SBN 24056073
blair.oscarsson@sprouselaw.com
Evan A. Johnson, SBN 24134463
evan.johnson@sprouselaw.com
701 S. Taylor, Suite 500
P. O. Box 15008
Amarillo, Texas 79105-5008
Tel: (806) 468-3300 / Fax: (806) 373-3454

**ATTORNEYS FOR DEFENDANTS SERGEANT NICHOLAS GRANT AND DEPUTY ANTONIO GUZMAN**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

SUMMARY JUDGMENT EVIDENCE ........ 1

INTRODUCTION ........ 2

FACTUAL BACKGROUND ........ 2

SUMMARY JUDGMENT STANDARD ........ 6

DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ........ 7

CONCLUSION ........ 34

PRAYER ........ 34

CERTIFICATE OF SERVICE ........ 36

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 7, 8

*Anderson v. Creighton*, 483 U.S. 635 (1987) .......... 9, 10, 14

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .......... 10

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) .......... 17

*Babb v. Dorman*, 33 F.3d 472 (5th Cir. 1994) .......... 31

*Baker v. McCollan*, 443 U.S. 137 (1979) .......... 11, 14, 17

*Betts v. Brennan*, 22 F.4th 577 (5th Cir. 2022) .......... 27, 28

*Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988) .......... 30

*Brooks v. City of West Point*, 639 F. App'x 986 (5th Cir. 2016) .......... 31, 32, 33

*Brower v. Cnty. of Inyo*, 489 U.S. 593 (1989) .......... 11

*Brown v. Lyford*, 243 F.3d 185 (5th Cir. 2001) .......... 10, 16

*Buehler v. Dear*, 27 F.4th 969 (5th Cir. 2022) .......... 19

*Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir. 2011) .......... 23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 1, 7

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) .......... 14

*Cohen v. California*, 403 U.S. 15 (1971) .......... 29

*Connelly v. Tex. Dep't of Crim. Just.*, 484 F.3d 343 (5th Cir. 2007) .......... 13

*Curran v. Aleshire*, 800 F.3d 656 (5th Cir. 2015) .......... 23, 29

*Daniels v. Williams*, 474 U.S. 326 (1986) .......... 10

*Davidson v. Cannon*, 474 U.S. 344 (1986) .......... 10

*Davis v. McKinney*, 518 F.3d 304 (5th Cir. 2008) .......... 13

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) .......... 14

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ....................30

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) ....................8

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) ....................17

*Flores v. Perez*, No. 25-50311, 2026 WL 499956 (5th Cir. 2026)....................28

*Fontenot v. Cormier*, 56 F.3d 669 (5th Cir. 1995)....................11

*Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007)....................30

*Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404 (5th Cir. 2008) ....................25

*Gibson v. Rich*, 44 F.3d 274 (5th Cir. 1995)....................16

*Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir. 2001)....................13, 15

*Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000)....................14

*Graham v. Connor*, 490 U.S. 386 (1989) .................... *passim*

*Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358 (5th Cir. 2007)....................34

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ....................9

*Hart v. O'Brien*, 127 F.3d 424 (5th Cir. 1997) ....................15

*Heien v. North Carolina*, 574 U.S. 54 (2014)....................13

*Hudson v. McMillian*, 503 U.S. 1 (1992)....................20

*Hunter v. Bryant*, 502 U.S. 224 (1991)....................14, 32

*Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996) ....................11

*Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989) (en banc)....................11

*King v. Handorf*, 821 F.3d 650 (5th Cir. 2016) ....................10

*Knight v. Caldwell*, 970 F.2d 1430 (5th Cir. 1992) ....................11

*Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir. 1993) ....................10

*Linbrugger v. Abercia*, 363 F.3d 537 (5th Cir. 2004)....................14

*Mace v. City of Palestine*, 333 F.3d 621 (5th Cir. 2003) ....................11, 12

*Malley v. Briggs*, 475 U.S. 335 (1986) .................................................................10, 25

*Martinez v. City of Rosenberg*, No. 4:21-CV-00432,

2023 WL 7290471 (S.D. Tex. Sept. 27, 2023) ...............................................................24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...............................7, 8

*McLin v. Ard*, 866 F.3d 682 (5th Cir. 2017) ..................................................................10

*Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017) (en banc) ...................................................10

*Mendenhall v. Riser*, 213 F.3d 226 (5th Cir. 2000) ...................................................14, 15

*Mendez v. Poitevent*, 823 F.3d 326 (5th Cir. 2016) ..............................................................25

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...........................................................................9

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) (en banc)...........................................10, 25

*Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001)..........................................16

*Mullenix v. Luna*, 577 U.S. 7 (2015)..................................................................................33

*Nebraska v. Wyoming*, 507 U.S. 584 (1993)........................................................................7

*Ohio v. Robinette*, 519 U.S. 33 (1996)..................................................................................15

*Pearson v. Callahan*, 555 U.S. 223 (2009)...........................................................................10

*Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990).....................................................15

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) .......................................................11

*Scott v. Harris*, 550 U.S. 372 (2007) ..............................................................................8, 23

*Scott v. United States*, 436 U.S. 128 (1978).........................................................................11

*Solis v. Serrett*, 31 F.4th 975 (5th Cir. 2022)...........................................19, 24, 25, 26, 27, 28

*Stroik v. Ponseti*, 35 F.3d 155 (5th Cir. 1994) .....................................................................14

*Tennessee v. Garner*, 471 U.S. 1 (1985)...............................................................................21

*Terry v. Ohio*, 392 U.S. 1 (1968) .........................................................................................11

*Thomas v. Kippermann*, 846 F.2d 1009 (5th Cir. 1988) ..........................................................11

*Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017) ....................28, 29

*Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021) ....................26, 27

*United States v. Causey*, 834 F.2d 1179 (5th Cir. 1987) ....................15

*United States v. Corral-Franco*, 848 F.2d 536 (5th Cir. 1988) ....................15

*United States v. Evans*, 572 F.2d 455 (5th Cir. 1978) ....................1 n.1

*United States v. Forrest*, 620 F.2d 446 (5th Cir. 1980) ....................30

*United States v. Mendez*, 27 F.3d 126 (5th Cir. 1994)....................15

*United States v. Muniz-Melchor*, 894 F.2d 1430 (5th Cir. 1990) ....................15

*United States v. Wadley*, 59 F.3d 510 (5th Cir. 1995) ....................14, 15

*United States v. White*, 401 U.S. 745 (1971) ....................8

*Vincent v. City of Sulphur*, 805 F.3d 543 (5th Cir. 2015)....................25

*Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018) ....................30

*Wilkins v. Gaddy*, 559 U.S. 34 (2010) ....................20

*Wilson v. Layne*, 526 U.S. 603 (1999)....................10

*Young v. City of Killeen*, 775 F.2d 1349 (5th Cir. 1985) ....................10

**Constitutional Provisions**

U.S. Const. amend. IV .................... *passim*

**Statutes**

Tex. Penal Code § 9.51....................12

42 U.S.C. § 1983....................2, 10, 14, 17

Tex. Penal Code § 42.01(a)(1)....................7, 29, 30

**Rules**

Fed. R. Evid. 803(6)....................1 n.1

Fed. R. Civ. P. 56....................7

TO THE HONORABLE COURT:

COME NOW Sergeant Nicholas Grant ("Grant") and Deputy Antonio Guzman ("Guzman") each in his individual capacity as an officer with the Randall County Sheriff's Office (collectively, "Defendants"). Defendants assert their entitlement to qualified immunity and file this brief in support of their Motion for Summary Judgment, as follows:

**SUMMARY JUDGMENT EVIDENCE**

Defendants offer and incorporate the following summary judgment evidence, which is contained in the Appendix to Defendants' Motion for Summary Judgment and Brief in Support.[1] The evidence shows that there is no genuine issue of dispute requiring a trial.

| | | |
|---|---|---|
| Exhibit A | Randall County Sheriff's Office Case Report – Cpl. Turner | App. 0001–0013 |
| Exhibit B | Randall County Sheriff's Office Case Report – Sgt. Grant | App. 0014–0020 |
| Exhibit C | Randall County Sheriff's Office Officer Narratives, Booking and Arrest Report | App. 0021–0031 |
| Exhibit D | Randall County Sheriff's Office Individual Arrest Report of John Jowers | App. 0032–0033 |
| Exhibit E | Sergeant Grant's body camera video | App. 0034 |
| Exhibit F | Deputy Guzman's body camera video – Part 1 | App. 0035 |
| Exhibit G | Deputy Guzman's body camera video – Part 2 | App. 0036 |

**INTRODUCTION**

In Plaintiff's Original Complaint, Plaintiff John Jowers III ("Jowers") brings claims of excessive force and unlawful arrest against Defendants. The claims are:

1. Excessive Use of Force in Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983 (See Pl.'s Orig. Compl. p. 6–10 [ECF 1]); and

[1] Defendants' summary judgment evidence is properly before the Court, as they are business records under Rule 803(6). Under the business-records hearsay exception of Federal Rule of Evidence 803(6), "it is not necessary that a sponsoring witness be employed by the business at the time of the making of each record. The witness must only be in a position to attest to its authenticity." *United States v. Evans*, 572 F.2d 455, 490 (5th Cir. 1978) (internal citation omitted). Additionally, evidence submitted in connection with summary judgment does not have to be presented in an admissible form; the trial court may consider the evidence on summary judgment provided the submitting party demonstrates that it would be possible to present the evidence in admissible form at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

2. Unlawful Arrest in Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983 (See Pl.'s Orig. Compl. p. 10–13 [ECF 1]).

## FACTUAL BACKGROUND

1. This case arises from Plaintiff John Calvin Jowers III's call for service to the Randall County Sheriff's Office on April 12, 2025, at approximately 8:17 p.m. Following the call, Randall County Dispatch asked Corporal Mason Turner to call Plaintiff regarding his concern that his children were with a person around whom they were not allowed. Ex. C, App. 0024-0025. Corporal Turner called Plaintiff, and he reported that his ex-wife, Castina Dobbins, had their children at the Route 66 Motor Speedway, 4101 South Loop 335 East, in Randall County, Texas, with her boyfriend, Austin Lindsey, in violation of a custody order that, according to Jowers, barred Lindsey from being around the children because of alleged abuse. *Id.*; Pl.'s Orig. Compl. p. 2 [ECF 1].

2. Corporal Turner asked Jowers whether he was referring to a protective order or to a provision of a child-custody agreement. Ex. C, App. 0024–0025. Jowers confirmed that he did not have a protective order and that the restriction was specified in the parties' child-custody agreement. *Id.* Corporal Turner explained that, because the order was a custody agreement rather than a protective order, deputies would not be able to make an on-view arrest for a violation, but that deputies could meet with Jowers, review the order, attempt to locate his ex-wife and the children, and document the violation with a report number Jowers could reference in court. *Id.*

3. Jowers became upset with that answer. *Id*. He accused the Canyon Police Department and the Sheriff's Office of lying on reports and attempting to help Dobbins. *Id.* Corporal Turner responded that he had no knowledge of any prior dealings but would be more than happy to have deputies look at the paperwork and document the violation for him. *Id.*

4. Jowers became more agitated and stated that, since law enforcement was not going to protect his children, he would take care of it himself. *Id*. Corporal Turner advised Jowers that he should not cause any issues or make the matter worse. *Id.* Jowers responded that he was going to the racetrack and was going to take care of the matter himself. *Id.*

5. Because of Jowers's agitated state and his statements about taking care of the matter himself and distrusting law enforcement to help him, Corporal Turner believed that if deputies were not present when Jowers arrived, Jowers would be disorderly and would possibly get into an altercation with his ex-wife or her boyfriend. *Id*. Corporal Turner told Jowers that he would request deputies meet him at the racetrack to review the order and try to assist him, and Jowers agreed. *Id.* Corporal Turner then requested over the radio that two officers meet Jowers at the racetrack. *Id.*

6. Sergeant Nicholas Grant and Deputy Antonio Guzman were dispatched. *Id*; Ex. B, App. 0014-0020; Ex. C, App. 0021-0023. Corporal Turner telephoned Grant directly and relayed the substance of his conversation with Jowers: the "court order" Jowers described was a child-custody agreement rather than a protective order; Turner had already explained the likely outcome to Jowers; Jowers had become agitated; and Jowers had made statements about taking care of the situation himself. Ex. C, App. 0024-0025; Ex. B, App. 0014-0020.

7. Guzman was advised while en route that Jowers was on his way to the Route 66 Motor Speedway with court-order paperwork stating that his ex-wife could not have their children around Lindsey. Ex. C, App. 0021-0023. Grant and Guzman arrived and parked at the front entrance of the racetrack. Ex. B, App. 0014-0020. That evening, the speedway was hosting a public racing event, and a large crowd, including families with young children, had gathered. *Id.*; Ex. C, App. 0021-0023; Ex. E, App. 0034; Ex. F, App. 0035. Spectators, including children, frequently walked past the officers' location to and from the front gate during the encounter. Ex. C, App. 0030; Ex. D, App. 0032-0033; Ex. E, App. 0034; Ex. F, App. 0035; Ex. G, App. 0036.

8. Jowers arrived on scene with a companion, Brandon Holt. Ex. B, App. 0014-0020; Ex. E, App. 0034; Ex. F, App. 0035. Jowers walked up to Grant and Guzman, and the officers attempted to establish rapport by introducing themselves and shaking Jowers's hand. *Id.* Jowers explained that his ex-wife had the children inside the speedway with her boyfriend and that the boyfriend was not to be around the children. Ex. C, App. 0021–0023; Ex. E, App. 0034; Ex. F, App. 0035. Jowers told Grant and Guzman that "there's PIs watching this" and that "this is more in depth than y'all can understand." Ex. E, App. 0034; Ex. F, App. 0035. Jowers produced a stack of papers and pointed to a specific clause; Grant took the stack and told Jowers he needed to read it and would be back shortly. Ex. B, App. 0014-0020; Ex. C, App. 0021-0023.

9. While Grant began to review the paperwork at his marked patrol unit, Guzman asked Jowers for his driver's license for the report. Ex. C, App. 0021-0023. Jowers immediately refused, stating, "For what, I don't have to ID." *Id.* Guzman explained that the identification was requested as part of the ongoing investigation. *Id.* Jowers continued to refuse to provide identification and stated that he was not the one under investigation. *Id.*; Ex. B, App. 0014-0020.

10. Because Jowers would not provide any form of identification for the report he had requested, Grant returned his paperwork and told him that if he was not going to cooperate, then they would not be able to help him. Ex. B, App. 0014–0020; Ex. C, App. 0021–0023. Jowers pushed back, saying, "Why do y'all need my ID? I told y'all who I am." Ex. E, App. 0034; Ex. F, App. 0035. Grant responded, "To figure who you are." Ex. E, App. 0034; Ex. F, App. 0035. Jowers began to record with his cell phone and challenged Grant and Guzman, asking, "So y'all need my ID because I'm coming to y'all with a complaint—is that what you're saying?" Ex. E, App. 0034; Ex. F, App. 0035. Grant again responded, "Yes, I, we, need to know who you are." Ex. E, App. 0034; Ex. F, App. 0035. Jowers replied, "I told you who I am," to which Grant said, "I need to verify that." Ex. E, App. 0034; Ex. F, App. 0035. Growing more agitated, Jowers asked Grant

whether he was under suspicion of anything. Ex. E, App. 0034; Ex. F, App. 0035. Grant said he was not. As Jowers kept pressing, Grant told him he was not going to argue with him. Ex. E, App. 0034; Ex. F, App. 0035. Finally, still recording, Jowers asked each of the officers, “Are you not going to do your job?” Ex. E, App. 0034; Ex. F, App. 0035. The officers responded, “I guess not.” Ex. E, App. 0034; Ex. F, App. 0035. Jowers then turned away, stating, “Alright, lawsuit.” Ex. E, App. 0034; Ex. F, App. 0035.

11. Jowers did not leave. He walked parallel to the front entrance of the racing venue in the parking area, where people, including families and children, were walking. Ex. B, App. 0014-0020. He then turned around and cursed, yelling an audible “f***!” *Id.*; Ex. C, App. 0021-0023; Ex. C, App. 0030; Ex. D, App. 0032-0033; Ex. E, App. 0034; Ex. F, App. 0035.

12. In response to Jowers’s profanity, Grant walked toward him, asking, “What’s that?” and directed Jowers to come over. Ex. E, App. 0034. Jowers responded shouting, “freedom of speech” and “cuss words are freedom of speech.” Ex. E, App. 0034. Grant informed Jowers that his conduct was disorderly. Ex. E, App. 0034; Ex. G, App. 0036.

Based on what Defendants knew at that moment: Jowers’s agitation throughout the encounter, his earlier statements to Corporal Turner that he would take care of the matter himself, and the number of families and children in the immediate area, Grant believed that Jowers would continue to use vulgar language in a public place in a manner that would greatly offend third parties and immediately breach the peace. Ex. B, App. 0014-0020. The situation was escalating, and Grant recognized that Jowers was walking toward his ex-wife and children. Ex. C, App. 0030; Ex. D, App. 0032-0033; Ex. E, App. 0034; Ex. G, App. 0036.

13. Grant told Jowers to place his arms behind his back. Ex. B, App. 0014-0020; Ex. E, App. 0034; Ex. G, App. 0036. Jowers asked, “Are you serious?” and Grant again directed him to put his arms behind his back. Ex. E, App. 0034; Ex. G, App. 0036. Jowers did not comply as

Grant moved to detain him, and Jowers tensed his arms and would not allow Grant to secure them for a pat-down. *Id.*; Ex. C, App. 0021-0023, 0030. Grant and Guzman then placed Jowers on the ground and secured him in handcuffs without further incident. Ex. B, App. 0014-0020; Ex. C, App. 0021-0023; Ex. E, App. 0034; Ex. G, App. 0036. The reports do not describe any strikes or weapon use. Ex. B, App. 0014-0020; Ex. C, App. 0021-0023, 0026. As Guzman applied the handcuffs while securing Jowers with his knee on Jowers's back, Jowers continued to yell that "this was harassment," that he "wasn't resisting," and that he "didn't do nothing." Ex. E, App. 0034. Grant continued to calmly tell Jowers that he was fine and instructed Guzman to work the handcuffs. Ex. E, App. 0034. Another law-enforcement officer working security at the racetrack approached as Grant and Guzman handcuffed Jowers on the ground. Ex. E, App. 0034. The officer told Jowers to calm down and said that they were just putting the "cuffs on him." Ex. E, App. 0034. As Guzman helped Jowers up and Grant gathered Jowers's dropped paperwork, Jowers continued protesting and yelling about freedom of speech, and Grant again explained that Jowers was under arrest for disorderly conduct. Ex. E, App. 0034.

14. Once Jowers was secured, Guzman assisted him off the ground, escorted him to the patrol vehicle, searched his person for officer safety, and secured him in the back seat. Ex. C, App. 0021-0023.

15. Guzman transported Jowers to the Randall County Jail without incident, and Grant booked him for disorderly conduct under Section 42.01 of the Texas Penal Code, a Class C misdemeanor. Ex. B, App. 0014-0020; Ex. C, App. 0021-0023, 0030. Jowers was booked at 9:56 p.m., posted a $500 bond, and was released the same evening at 11:31 p.m. Ex. C, App. 0026, 0028-0029; Ex. D, App. 0032-0033.

16. Less than a month later, on May 10, 2025, Jowers again contacted the Randall County Sheriff's Office to report that his ex-wife had their children around her boyfriend at the

same racetrack. Ex. A, App. 0001–0013. Corporal Turner again spoke with him by telephone, reviewed the screenshots of the order Jowers provided, again explained that the order was a child-custody agreement rather than a protective order, and, at Jowers's request, prepared an informational report documenting the reported violation. *Id.*

**SUMMARY JUDGMENT STANDARD**

17. The party moving for summary judgment under Federal Rule of Civil Procedure 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, the movant may establish that the other party bears the burden of proof at trial and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). To avoid summary judgment, the party opposing the motion must come forward with competent summary-judgment evidence showing a genuine issue of fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Anderson, 477 U.S. at 257*. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rule 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. Only a genuine dispute over a material fact—a fact that might affect the outcome of the suit under the governing substantive law—will preclude summary judgment. *Id.* at 248. The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual context renders a claim implausible, the nonmovant "must come forward with more persuasive evidence to support the claim than would otherwise be necessary." *Matsushita,* 475 U.S. at 587.

18. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in that party's favor. *Id.* However, only *reasonable* inferences in favor of the nonmoving party may be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468 (1992). Additionally, video recordings are given a presumption of reliability and significant evidentiary weight because "[a]n electronic recording will many times produce a more reliable rendition … than will the unaided memory of a police agent." *United States v. White*, 401 U.S. 745, 753 (1971). Accordingly, where testimony conflicts with video evidence, the Court must view the "facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

19. At the time of the incident complained of by Plaintiff, Defendants were officers with the Randall County Sheriff's Office. As Randall County law enforcement officers, Defendants are entitled to the defense of qualified immunity, which is an affirmative defense to all federal law claims. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. Qualified immunity is a threshold legal question to be decided by the court. *Mitchell v. Forsyth*, 472 U.S. 511, 527-529 (1985). The government official's liability turns on the "objective legal reasonableness" of the action assessed in light of the legal rules that were "clearly established" at the time it was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

20. Even though a state official may have erred, he is still entitled to qualified immunity if it can be shown that his actions were reasonable, albeit mistaken. *Lampkin v. City of*

*Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). "That is the balance the courts have struck between compensating wronged individuals for deprivation of constitutional rights and frustrating officials in discharging their duties for fear of personal liability." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). Conduct which is merely negligent cannot meet the standard for liability under § 1983. *Daniels v. Williams*, 474 U.S. 326, 331-34 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Further, that he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

21. To defeat a qualified immunity defense, the plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). "To avoid summary judgment on qualified immunity, 'the plaintiff need not present absolute proof, but must offer more than mere allegations.'" *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc) (quoting *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016)).

22. Regarding the second prong of the qualified immunity defense, an official's alleged misconduct violates "clearly established" law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson*, 483 U.S. at 640). "Existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 741. To find that the constitutional right was clearly established at the time of the challenged conduct, the court "must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours

of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc). Further, this inquiry is based on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). The asserted right must be clearly established in a "particularized" way, such that the illegality of the challenged conduct, in light of pre-existing precedent, was apparent at the time of the conduct. *Anderson*, 483 U.S. at 640.

### *A. __Excessive Use of Force__*

23. Plaintiff's claims of excessive force arise under the Fourth Amendment and must be addressed under that amendment. *See Graham v. Connor*, 490 U.S. 386 (1989); *Brower v. Cnty. of Inyo*, 489 U.S. 593 (1989); *Baker v. McCollan*, 443 U.S. 137 (1979); *Mace v. City of Palestine*, 333 F.3d 621 (5th Cir. 2003); *Thomas v. Kipperman*, 846 F.2d 1009, 1011 (5th Cir. 1988). In analyzing the claim, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). Furthermore, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978)).

24. In the Fifth Circuit, a plaintiff asserting an excessive force claim must prevail upon each of three elements: (1) a physical injury; (2) resulting directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996); *Johnson v. Morel*, 876 F.2d

477, 480 (5th Cir. 1989) (en banc); *Knight v. Caldwell*, 970 F.2d 1430, 1433–34 (5th Cir. 1992); *see also Fontenot v. Cormier*, 56 F.3d 669 (5th Cir. 1995).

25. When examining the question of whether the use of force is clearly excessive and objectively unreasonable, the inquiries are often intertwined. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). Assessing an excessive force claim requires a "test of reasonableness" under the Fourth Amendment that is "not capable of precise definition or mechanical application." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal marks and citations omitted). Instead, this inquiry "requires careful attention to the facts and circumstances of each particular case." *Id.* Guideposts for excessive force include (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

26. "With respect to a claim of excessive force, the…standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. The fact that in retrospect, there may have been alternative courses of action for an officer to take does not render the officer's use of the force excessive or unreasonable. *See Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003).

27. A peace officer, or a person acting in a peace officer's presence and at his direction, is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to make or assist in making an arrest or search, or to prevent or assist in preventing escape after arrest, if: (1) the actor reasonably believes the arrest or search is

lawful or, if the arrest or search is made under a warrant, he reasonably believes the warrant is valid; and (2) before using force, the actor manifests his purpose to arrest or search and identifies himself as a peace officer or as one acting at a peace officer's direction, unless he reasonably believes his purpose and identity are already known by or cannot reasonably be made known to the person to be arrested. *See* Tex. Penal Code § 9.51.

### ***B.*** ***Unlawful Arrest***

28. As set forth above in paragraphs 19–22, qualified immunity shields government officials from civil liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known. In the unlawful-arrest context, Plaintiff must show both a constitutional violation and that Defendants' conduct was objectively unreasonable in light of clearly established law at the time of the incident. *See Connelly v. Tex. Dep't of Crim. Just.*, 484 F.3d 343, 346 (5th Cir. 2007).

29. But even if the plaintiff demonstrates the violation of a clearly established right, "the official is entitled to qualified immunity if his conduct was objectively reasonable." *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (cleaned up).

30. Law enforcement officers may still have probable cause to arrest someone even when they have a mistaken belief of fact or law. *Heien v. North Carolina*, 574 U.S. 54, 63 (2014) ("Probable cause . . . encompass[es] suspicion based on reasonable mistakes of both fact and law."). *See also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in

ways they reasonably believe to be lawful—should not be held personally liable.”). Accordingly, “law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.” *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)) (emphasis added).

31. Section 1983 “is not itself a source of substantive rights,” but merely provides “a method for vindicating federal rights elsewhere conferred.” *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Therefore, before a plaintiff can support a valid cause of action under § 1983, he must identify constitutionally protected conduct a defendant has infringed. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998). Importantly, the reasonableness of an officer’s actions must be evaluated from the objective perspective of a *reasonable police officer on the scene*—not the subjective beliefs of a plaintiff or his attorney. *See Linbrugger v. Abercia*, 363 F.3d 537, 542–43 (5th Cir. 2004); *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994).

32. In the context of a Fourth Amendment false arrest claim, “[a]n officer’s conduct is objectively reasonable ‘if a reasonable person in their position could have believed he had probable cause to arrest.’” *Deville v. Marcantel*, 567 F.3d 156, 166 (5th Cir. 2009) (*citing Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). Moreover, the Fifth Circuit’s threshold for a finding of probable cause is quite low, as established in *United States v. Wadley*, 59 F.3d 510, 512–13 (5th Cir. 1995). In *Wadley*, the Fifth Circuit held that probable cause existed to arrest a suspect who merely had fled from police in a high crime area and while doing so he “reached into his pocket.” *Id.*

33. Probable cause to arrest a criminal defendant for any offense is a bar to an unlawful arrest and imprisonment claim. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). The probable cause inquiry is an objective one; the issue is why an officer believes probable cause exists and whether, based on the information the officer possesses, a reasonable person could

come to the same objective conclusion. *Ohio v. Robinette*, 519 U.S. 33, 38–39 (1996). The subjective beliefs and motivations of the seizing officer are irrelevant to this determination. "So long as police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry." *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir. 1987).

34. An officer has probable cause to arrest when "the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect has committed or was committing an offense." *Wadley*, 59 F.3d at 512; *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001); *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997); *United States v. Mendez*, 27 F.3d 126, 129 (5th Cir. 1994); *United States v. Corral-Franco*, 848 F.2d 536 (5th Cir. 1988). Although probable cause requires more than a bare suspicion of wrongdoing, it requires "substantially less evidence than that sufficient to support a conviction." *United States v. Muniz-Melchor*, 894 F.2d 1430, 1438 (5th Cir. 1990). Probable cause is a "fluid concept" that turns on the probabilities of the particular factual circumstances. *Mendenhall v. Riser*, 213 F.3d at 231 (5th Cir. 2000). Therefore, the Court can look to whether there is a "fair probability" given the totality of the circumstances a reasonable officer could have believed the crime was committed. *Id.*

35. "An officer's entitlement to qualified immunity based on probable cause is difficult for a plaintiff to disturb." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 753–54 (5th Cir. 2001). "A plaintiff must clear a significant hurdle to defeat qualified immunity. '[T]here must not even arguably be probable cause for the search and arrest for immunity to be lost.' That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001).

36. An officer is immune from suit even if it is later determined that probable cause did not exist. *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). "[I]f officers of reasonable competence could disagree on whether or not there was probable cause to arrest a defendant, immunity should be recognized." *Gibson*, 44 F.3d at 277.

37. In *Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004), an arrestee brought an action against the City and police officers for alleged use of excessive force, malicious prosecution, and unlawful arrest. The plaintiff arrestee could not recover for violations of Fourth Amendment rights where the officer had probable cause to arrest for evading detention. *Id.* at 403. The validity of the arrest was not affected by the district attorney's subsequent decision to drop the charges. *Id.* at 394 (noting the charge for evading detention was later dismissed).

38. "The Constitution does not guarantee that only the guilty will be arrested. If it did, §1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker*, 443 U.S. at 145. An officer who has probable cause to believe that an offense has occurred in his presence may arrest the suspected offender without a warrant without offending the Fourth Amendment, even where the offense is a minor one and punishable only by fine. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

### ***C. <u>Grant and Guzman Are Entitled to Qualified Immunity on Jowers's Excessive Force Claim.</u>***

39. Plaintiff Jowers has sued Defendants for alleged excessive use of force. Pl.'s Orig. Compl. ¶¶ 12–22, 31–53 [ECF 1]. Jowers alleges that Grant and Guzman used excessive force during his arrest on April 12, 2025, which occurred after Jowers called Grant a "hoe" while walking away from the scene. Specifically, Jowers alleges that Grant grabbed him, swept his leg, and slammed him to the ground, and that Grant and Guzman then placed their knees and full body weight on him while he was on the ground. Pl.'s Orig. Compl. ¶¶ 12–22 [ECF 1].

40. The summary judgment evidence establishes that before arriving at the Speedway, Grant learned from Corporal Turner that Corporal Turner had already told Jowers that his ex-wife's boyfriend was unlikely to be arrested on-view, and Jowers responded that if officers were not going to do anything about it, he would. Ex. B at 3, App. 0016; Ex. C at 5, App. 0025. Grant therefore arrived knowing that Jowers had signaled a willingness to take matters into his own hands in a public venue where his ex-wife, her boyfriend, and his children were reportedly present. Ex. B, App. 0016; Ex. C, App. 0024–0025. Jowers arrived agitated, soon began recording, and refused repeated requests for identification. Ex. B at 3, App. 0016; Ex. C at 2, App. 0022; Ex. E, App. 0034. As he walked away from officers through the parking lot, where families and children were passing, Jowers turned and loudly shouted an obscenity. Ex. B at 3, App. 0016; Ex. C at 2, App. 0022; Ex. E, App. 0034. Given Jowers's stated intent to handle the matter himself, his agitated and uncooperative demeanor throughout the encounter, and his shouting of an obscenity in a crowded public area where families and children were passing, Grant approached, informed Jowers that his conduct was disorderly, and directed Jowers to place his arms behind his back. Jowers responded that "cuss words are freedom of speech," tensed his arms, and refused to allow Grant to secure them. Ex. B at 3, App. 0016; Ex. D at 1, App. 0032; Ex. E, App. 0034; Ex. F, App. 0035. Grant and Guzman then quickly maneuvered Jowers to the ground and handcuffed him without further incident. Ex. C at 2, App. 0022; Ex. E, App. 0034; Ex. G at App. 0036.

41. In *Solis v. Serrett*, the Fifth Circuit held that even when an arrestee is detained for a minor offense and poses a minimal threat, an officer may use reasonable force—such as taking the arrestee to the ground—if the arrestee is backing away, resisting, uncooperative, and hostile. 31 F.4th 975, 982–83 (5th Cir. 2022). There, the Fifth Circuit held "that it was not objectively unreasonable for officers to restrain an individual's arms and force her to the ground in a 'takedown' maneuver to handcuff her because the individual was belligerent prior to her arrest for

public intoxication and mildly resisted arrest by struggling against the officers as they tried to grab her arms." *Id.* at 983. The Fifth Circuit also acknowledged that "a suspect who backs away from the arresting officers is actively resisting arrest—albeit mildly." *Buehler v. Dear*, 27 F.4th 969, 984 (5th Cir. 2022) (cleaned up). In this case, the *Graham* factors weigh in favor of Defendants' qualified immunity.

**i. Video evidence.**

42. The evidence does not show that the force used was clearly excessive to the need; the body-worn camera footage supplies the most direct evidence. *See* Ex. E, 1:01–4:00/20:53:10–20:56:09, App. 0034; Ex. F, App. 0035; Ex. G, 0:10–3:03/20:53:59–20:56:52, App. 0036. Even when the evidence is viewed in the light most favorable to Jowers, each Defendant's actions were objectively reasonable.

43. For purposes of applying the *Graham* factors, the following record facts—also summarized in paragraphs 1–16 above—are material: (1) Corporal Turner advised Jowers by phone that the order he complained of was a child-custody order rather than a protective order, officers could document the violation but could not make an on-view arrest, and Jowers should not go to the racetrack and make the matter worse; (2) Jowers said that if officers would not act, he would take care of the matter himself, prompting Turner to request that officers meet Jowers at the track and to relay Jowers's statements and agitated state to Grant; (3) Grant and Guzman met Jowers at the Route 66 Motor Speedway, a public racing event drawing a crowd that included families; (4) Jowers approached the deputies, appeared agitated, and presented paperwork; (5) Grant took the paperwork to his unit to review it, and while he did so Jowers refused Guzman's requests for identification, stating that he did not have to identify himself; (6) Grant returned the paperwork and told Jowers that if he would not cooperate, the deputies could not assist him; (7) Jowers began recording with his phone, argued with Grant and Guzman, eventually saying, "Are

you not going to do your job?" and "Lawsuit," and walked off parallel to the venue entrance, where people were walking; (8) Jowers then turned and yelled an obscenity in the presence of those bystanders; (9) based on Jowers's prior statements to Turner, his demeanor throughout the encounter, and the obscenity shouted at a crowded family venue, Grant approached, informed Jowers that he was being disorderly, and directed Jowers to place his arms behind his back; (10) Jowers immediately retorted, "freedom of speech" and "cuss words are free speech," then tensed his arms and did not allow Grant to secure them; (11) Grant and Guzman then took Jowers to the ground, and Guzman applied knee pressure while they secured Jowers's hands in handcuffs; (12) once Jowers was handcuffed, the deputies assisted him to his feet, and Guzman escorted him to the patrol unit; and (13) while in the back of Guzman's patrol unit, Jowers explained that "he's just frustrated" and that "he didn't mean it."

**ii. Injury.**

44. Jowers claims to have suffered some injury as a result of being maneuvered to the ground during his arrest. The degree of injury is relevant to, but not dispositive of, an excessive-force claim. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (explaining that "[i]njury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts"). Even if the Court credits Jowers's claim of an injury, any dispute over its extent would not necessitate trial because the use of force in gaining Jowers's compliance while handcuffing and arresting him was reasonable in light of (1) the prior statements to Corporal Turner of which Grant and Guzman were aware; (2) Jowers's refusal to comply with repeated directives when Grant began placing him under arrest; (3) his resistance; and (4) the risk of a continuing breach of the peace.

**iii. The reasonableness of the force.**

45. "[T]he question is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Considering the totality of the circumstances, Defendants Grant and Guzman reasonably effectuated Jowers's arrest.

46. The first *Graham* factor is the severity of the crime at issue, and this offense was a Class C misdemeanor and neither violent nor dangerous. But the severity of the offense is only one factor among several, and the reasonableness of an officer's response is judged by what he knew at the moment force was used, not by the charge that issued afterward. *Graham*, 490 U.S. at 396. Grant and Guzman knew considerably more than that Jowers had cursed. Ex. C, App. 0025. The record shows that Defendants acted only after Jowers refused to identify himself during an investigation he had requested, walked toward the front entrance of a crowded public venue where families and young children were coming and going, and shouted a loud obscenity in their presence. Ex. B, App. 0014–0020; Ex. C, App. 0021–0023, 0030; Ex. E, App. 0034; Ex. F, App. 0035; Ex. G, App. 0036. Grant did not reach for Jowers when he first became argumentative, when he raised his phone, or when he walked away. Ex. E, App. 0034. He moved to detain Jowers only after Jowers turned back toward the gate and shouted a curse. Ex. B, App. 0014–0020; Ex. E, App. 0034.

47. The second *Graham* factor, whether Jowers posed an immediate threat to the safety of the officers or others, favors granting Defendants qualified immunity. Before either deputy arrived, Corporal Turner spoke with Jowers by phone and explained that officers could document a violation but could not make an on-view arrest, and that he should not go to the racetrack and make the matter worse. Ex. C, App. 0025. Jowers accused the Sheriff's Office of covering for his ex-wife and twice said that, since law enforcement would not protect his children, he would take care of the matter himself. *Id.*; Ex. C, App. 0024–0025. Turner took that statement seriously. Ex.

C, App. 0025. He believed that if deputies were not present when Jowers arrived, Jowers would be disorderly and might get into an altercation with his ex-wife or her boyfriend. *Id*. He requested that two deputies be sent to meet Jowers, and he telephoned Grant directly to relay both the statement and Jowers's agitated state. *Id.*; Ex. C, App. 0024–0025. Grant and Guzman therefore arrived already knowing that Jowers had announced his intention to intervene personally. Ex. B, App. 0016. What the deputies encountered on scene confirmed that concern when Jowers reported that the individuals at the center of his grievance—his ex-wife, his children, and the man he accused of abusing his children—were reportedly inside the venue. Ex. B, App. 0016; Ex. C, App. 0025; Ex. E, App. 0034; Ex. F, App. 0035. Jowers refused Guzman's repeated requests for identification, argued with the officers, and then walked off past the entrance where bystanders were passing before turning and shouting an obscenity across the crowd. Ex. B, App. 0016; Ex. C, App. 0022; Ex. E, App. 0034. He thus acted in the manner Turner feared—becoming disorderly in front of the deputies, in a parking lot full of families, while the people involved in the custody dispute were reportedly inside. Ex. E, App. 0034; Ex. F, App. 0035; Ex. G, App. 0036. Because Jowers had refused to identify himself, the officers did not yet have identifying information about him when they detained him. Ex. B, App. 0014–0020; Ex. C, App. 0021–0023; Ex. E, App. 0034; Ex. F, App. 0035; Ex. G, App. 0036. Jowers alleges that he never raised his voice, made no threats, and carried no weapon. Pl.'s Orig. Compl. ¶¶ 16, 19 [ECF 1]. But the inquiry is what a reasonable officer on the scene would have perceived, not whether the threat had yet materialized. *Graham*, 490 U.S. at 396. Grant was entitled to credit Turner's warning. In context, an agitated man who had said he would handle a custody dispute himself, and who was now near the people involved in that dispute, presented a reasonable risk of escalation that an officer need not wait out.

48. The third *Graham* factor, whether Jowers actively resisted arrest or attempted to evade arrest by flight, favors granting qualified immunity to Defendants. Grant gave a clear and

simple command: place your arms behind your back. Ex. B, App. 0016; Ex. E, App. 0034. Jowers did not comply. *Id.* Instead, he argued about "freedom of speech" while Grant twice instructed him to put his hands behind his back, tensed his arms against Grant's attempt to secure them, and physically resisted both officers when they moved to detain him. Ex. B, App. 0016; Ex. C, App. 0022; Ex. D, App. 0032; Ex. E, App. 0034; Ex. F, App. 0035. Jowers's arrest followed his refusal to provide identification and arguing with the deputies. Ex. B, App. 0016; Ex. C, App. 0022; Ex. E, App. 0034. Jowers alleges that he was not actively resisting or evading arrest, that he placed his hands behind his back, and that he was stationary when Grant informed him he was under arrest. Pl.'s Orig. Compl. ¶¶ 13, 17 [ECF 1]. That account cannot be reconciled with the video and cannot be credited. Ex. E, App. 0034; *See Scott*, 550 U.S. at 380–81 (2007); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). A suspect's active resistance is a key factor in the Fourth Amendment's objective-reasonableness test. *See Graham*, 490 U.S. at 396. Accordingly, qualified-immunity jurisprudence recognizes the need for officers to use reasonable force to subdue and handcuff suspects who are otherwise resisting. *Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015). The third *Graham* factor accordingly weighs in Defendants' favor.

49. The force the deputies used in response was limited, and it stopped once it achieved its purpose. Only after Jowers tensed his arms and refused to let Grant secure them did Defendants take him to the ground. Ex. B, App. 0014–0020; Ex. C, App. 0021–0023, 0030. As reflected in the reports and videos, neither Grant nor Guzman struck Jowers, drew a weapon, deployed a Taser or chemical agent, or used any pain-compliance technique. Ex. B, App. 0014–0020; Ex. C, App. 0021–0023, 0026; Ex. E, App. 0034; Ex. F, App. 0035; Ex. G, App. 0036. Grant and Guzman used a controlled takedown, and Guzman applied only knee pressure to Jowers's back while bringing Jowers's hands together and applying handcuffs. Ex. E, App. 0034; Ex. G, App. 0036. Once Jowers was secured, Guzman helped him to his feet, walked him to the patrol unit, and released his vehicle

keys to his friend at Jowers's request. Ex. C, App. 0021–0023; Ex. E, App. 0034; Ex. G, App. 0036.

50. Taken together, the *Graham* factors support Defendants' assertion of qualified immunity. Based on the totality of the circumstances, the force used by Defendants Grant and Guzman was neither excessive nor unreasonable. *See, e.g.*, *Martinez v. City of Rosenberg*, No. 4:21-CV-00432, 2023 U.S. Dist. LEXIS 201093, 2023 WL 7290471, at *3 (S.D. Tex. Sept. 27, 2023) (granting qualified immunity from false-arrest and excessive-force claims).

**iv. No precedent placed the officers' conduct beyond debate.**

51. As set forth above, Jowers cannot establish the first prong required to overcome Defendants' qualified-immunity defense. As to the second prong, Plaintiff cannot establish that, as of April 12, 2025, clearly established law would have informed these officers that their conduct was unreasonable.

52. At summary judgment, a plaintiff's burden "to rebut a claim of qualified immunity once the defendant has properly raised it in good faith" is "a demanding one." *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (citations omitted). That burden is not satisfied by "some metaphysical doubt as to material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The plaintiff must rebut the defense "by establishing that the official's allegedly wrongful conduct violated a clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).

53. Thus, Plaintiff must show the Court that, at the time of this incident, clearly established law would have made clear that no reasonable officer could have taken to the ground

an agitated subject who warned officers he would handle his custody dispute himself if they would not act, appeared at the crowded venue where he reported his ex-wife, his children, and the man he accused of abusing them were gathered, refused to identify himself, shouted an obscenity across that crowd, and then refused an express command to place his arms behind his back while tensing against being handcuffed. Plaintiff cannot point to any such case. Defendants Grant and Guzman are therefore entitled to qualified immunity on Plaintiff's excessive-force claim.

54. "To determine whether a right is clearly established, [courts] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Solis v. Serrett*, 31 F.4th 975, 984 (5th Cir. 2022) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (cleaned up)). "The precedent must also be at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Solis*, 31 F.4th at 984 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)). No such precedent existed that informed Grant and Guzman that their actions were clearly forbidden.

55. In *Solis,* the Fifth Circuit considered *Tucker v. City of Shreveport,* which involved a plaintiff who was pulled over for a broken brake light. *Solis*, 31 F.4th at 986; *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021). The officer in *Tucker* asked the plaintiff to come to the back of the car, where he searched him and found a small knife. Although the plaintiff was agitated, he was compliant. *Id.* He was never told that he was under arrest. *Id.* The plaintiff denied that he ever pulled away from the officers, but the officers claimed that he jerked his arm when they tried to arrest him, and the video showed his arm moving. *Id.* at 178. The officers performed a takedown and brought the plaintiff to the ground. *Id.* at 175. The plaintiff sued, and the district court denied qualified immunity to the officers. *Id.* at 176. The Fifth Circuit reversed after reviewing the evidence and emphasizing that the events must be viewed from the officers'

perspective at the time, finding no constitutional violation and no clearly established law prohibiting the conduct. *Id.* at 176-81.

56. In *Solis*, the plaintiff was generally hostile to the officers from the beginning of the traffic stop, emphasized that she was near home, argued with the officers, pulled away when an officer asked for her phone, and stepped back and exclaimed, "Drop it? Excuse me!" when told she was being arrested. 31 F.4th at 982. After considering *Tucker*, the Fifth Circuit emphasized that if there was no constitutional violation in *Tucker*—where officers performed a takedown on a mostly compliant plaintiff who was never told he was under arrest and whose resistance consisted of jerking his arm away—it was difficult to say that there was a "clearly established" violation in *Solis*. 31 F.4th at 986-87.

57. Similarly, in *Betts v. Brennan*, 22 F.4th 577, 580-81 (5th Cir. 2022), a police officer used a Taser on a plaintiff who was highly agitated but had mostly complied with the officer's orders. The district court denied qualified immunity, but the Fifth Circuit reversed, holding that the plaintiff's actions rose to active resistance. *Id.* at 583-86.

58. These cases demonstrate that as of April 12, 2025, the constitutional question at issue here was far from "beyond debate." *See Solis*, 31 F.4th at 980; *Betts*, 22 F.4th at 580-81. If the law was not sufficiently clear to deny qualified immunity in these factually similar cases, it follows that no "clearly established" right exists here.

59. Plaintiff cites *Trammell v. Fruge* in his Complaint in an attempt to show clearly established law forbid Defendants' conduct. However, that case would not have supplied Grant and Guzman fair notice that their arrest and takedown of Jowers violated the Fourth Amendment. 868 F.3d 332, 343 (5th Cir. 2017). There, the Fifth Circuit held that it was "clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." *Id.*

at 343. *Trammell* addressed four officers' tackling a nonresistant suspect and breaking his spine, resulting in the suspect requiring a wheelchair. *Id.* at 337-38. "*Trammell* gives fair notice that, once a non-threatening and at-most-passively-resisting suspect is on the ground, officers may not deliver knee strikes or twist his limbs beyond their natural range to subdue him." *Flores v. Perez*, No. 25-50311, 2026 WL 499956, at *11 (5th Cir. 2026).

60. The on-the-ground conduct of Grant and Guzman does not fall within *Trammell's* prohibition. Guzman delivered no knee strikes and no punches. Ex. E, App. 0034. He placed a knee on Jowers to hold him in position while applying handcuffs. Ex. E, App. 0034. Grant directed a quick handcuffing, and once Jowers was cuffed, Guzman promptly helped Jowers to his feet. Ex. E, App. 0034. The force was brief, limited to what was needed to handcuff, and stopped once Jowers was restrained. Ex. E, App. 0034.

61. Moreover, the Fifth Circuit's "qualified immunity jurisprudence is filled with cases recognizing the need for officers to use reasonable force to subdue and handcuff suspects who strike them or are otherwise resisting." *Curran*, 800 F.3d at 661. The fact that the encounter moved quickly does not make the force unreasonable; the videos show that Grant went hands-on only after Jowers refused an express command to place his arms behind his back and tensed against being secured, and that the deputies used no more force than was necessary to complete the arrest. Ex. B, App. 0016; Ex. C, App. 0022; Ex. D, App. 0032; Ex. E, App. 0034; Ex. F, App. 0035; Ex. G, App. 0036.

62. Therefore, the Court should find that Grant and Guzman are entitled to qualified immunity on Jowers's excessive-force claim.

### *D. Grant and Guzman Are Entitled to Qualified Immunity on Jowers's Unlawful Arrest Claim.*

63. It is an offense to intentionally or knowingly use, in a public place, abusive, indecent, profane, or vulgar language that, by its very utterance, tends to incite an immediate breach of the peace. Tex. Penal Code § 42.01(a)(1). Defendants do not contend that profanity, standing alone, is categorically unprotected speech. *See Cohen v. California*, 403 U.S. 15, 25 (1971). The question is whether a reasonable officer could view Jowers's words together with his accompanying conduct and the surrounding circumstances as tending to incite an immediate breach of the peace.

64. Plaintiff contends that Grant and Guzman violated the Fourth Amendment by arresting him for disorderly conduct. Pl.'s Orig. Compl. ¶¶ 23, 60 [ECF 1].

65. Here, Grant and Guzman were objectively reasonable in believing that probable cause existed. *See Westfall v. Luna*, 903 F.3d 534, 550 (5th Cir. 2018) (granting qualified immunity when the record failed to show that the officer's actions were motivated by the plaintiff's speech rather than her conduct of reaching for a doorknob against officers' instructions). Whether probable cause existed depends on what an objectively reasonable officer would perceive under the totality of the circumstances known at the time of the arrest. *See District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (reaffirming that probable cause is based on an objective totality-of-the-circumstances test); *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) ("Although the probable cause inquiry is an objective one, it must nevertheless be conducted in light of the actual facts known to the officer at the time of the arrest.").

66. Grant arrived with the knowledge from Corporal Turner that Jowers had warned he would take care of his custody dispute himself if deputies would not act. Ex. C, App. 0025. Probable cause exists "when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Bigford v. Taylor*, 834

F.2d 1213, 1218 (5th Cir. 1988) (quoting *United States v. Forrest*, 620 F.2d 446, 453 (5th Cir. 1980)). Grant then observed Jowers grow agitated, refuse to identify himself, walk toward a venue entrance where families and children were passing, and turn and shout an obscenity—"f***" or "f***ing"—across that crowd. Ex. B, App. 0016; Ex. E, App. 0034. Jowers was more than just profane. Grant's belief that Jowers's conduct violated Section 42.01(a)(1) was objectively reasonable, and qualified immunity protects that judgment.

67. Jowers's own Complaint acknowledges that he called Grant a "hoe" as he walked away from the deputies. Pl.'s Orig. Compl. p. 2 [ECF 1]. The body-camera footage depicts Jowers turning back and shouting an obscenity—"f***" or "f***ing"—along with "hoe" at Grant and Guzman loudly across the entrance of the racetrack. Ex. E, 2:37–2:41/20:54:46–20:54:50. The evidence places the encounter in a public place: the front entrance of a racetrack during a public event, where people were coming and going. Ex. B, App. 0016; Ex. C, App. 0022; Ex. E, App. 0034; Ex. F, App. 0035; Ex. G, App. 0036.

68. "When an unlawful arrest is alleged, the qualified-immunity determination turns on whether a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed. . . . Even law-enforcement officials who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity. . . . The qualified-immunity defense protects all but the plainly incompetent or those who knowingly violate the law." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (citations omitted).

69. On those facts—and not profanity alone—a reasonable officer could conclude that Jowers's conduct and the surrounding circumstances tended to incite an immediate breach of the peace.

70. Qualified immunity protects that reasonable judgment even if a court later determines that the State could not prove every element beyond a reasonable doubt. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

71. Plaintiff's reliance on *Brooks v. City of West Point*, an unpublished opinion, does not establish that the officers' conduct here was unlawful. 639 F. App'x 986, 987 (5th Cir. 2016). *Brooks* did not announce a categorical rule that an officer may never arrest a person whose disorderly conduct includes profanity. *Id.* Rather, the court analyzed the particular circumstances surrounding the plaintiff's speech and conduct, accepting the plaintiff's version of disputed events at the summary-judgment stage. *Id.*

72. Brooks summoned an officer to his home and became angry after the officer said that Brooks could not immediately press charges concerning allegedly harassing telephone calls. *Id.* Brooks used curse words and disrespectful language while directing the officer to leave his property, but he did not verbally or physically threaten the officer and made no threatening, combative, or other overt gesture. *Id.* The officer nevertheless announced that Brooks would be arrested for disorderly conduct before backup arrived and before Brooks later exited the house and moved toward the officers. *Id.* Thus, the pertinent conduct in *Brooks*, as the court was required to view it, consisted of nonthreatening profanity and disrespectful language at Brooks's residence, without an accompanying threat, combative gesture, or comparable act demonstrating an immediate danger to the peace.

73. The circumstances here are materially different. Instead, the evidence shows that Plaintiff stated he would take the matter into his own hands. Ex. B, App. 0014–0020. Then, agitated and refusing to identify himself for the report he had requested, Plaintiff argued with Sergeant Grant and walked off but did not leave the area. Ex. B, App. 0014–0020; Ex. C, App. 0021–0023; Ex. E, App. 0034; Ex. F, App. 0035. He walked parallel to the front entrance of Route 66 Motor

Speedway, where several people, including small children, were walking to and from the gate. Ex. B, App. 0014–0020. He then turned around and yelled, including loudly shouting "f***" or "f***ing." *Id.*; Ex. C, App. 0021–0023, 0030; Ex. D, App. 0032–0033; Ex. E, App. 0034. Unlike the facts accepted in *Brooks*, the officers here observed an agitated man refusing to cooperate with an active investigation, remaining on the scene, and shouting profanity at the entrance of a public venue as families and children passed.

74. The timing of the officers' decision further distinguishes *Brooks*. There, the officer announced that Brooks would be arrested based solely on words from an exchange that ended when Brooks went back inside his home, and the officer then waited for backup before returning to knock on the door. *Brooks*, 639 F. App'x at 987. Here, Sergeant Grant decided to arrest Plaintiff only after Plaintiff refused to identify himself for the report he had requested, argued with the deputies, walked toward the venue entrance, and then turned and loudly shouted profanity near the entrance in the presence of families and children. Ex. B, App. 0014–0020; Ex. C, App. 0021–0023, 0030; Ex. D, App. 0032–0033; Ex. E, App. 0034; Ex. F, App. 0035. Grant acted while that conduct was unfolding in public, not after the encounter had ended. Ex. B, App. 0014–0020; Ex. E, App. 0034. The officers' assessment therefore rested not on profanity standing alone, but on the totality of Plaintiff's words and accompanying conduct as the encounter unfolded.

75. The setting and potential effect on others also distinguish *Brooks*. In *Brooks*, the evidence viewed favorably to the plaintiff showed an exchange at his home in which he directed the officer to leave his property, without threatening or combative conduct. *Brooks*, 639 F. App'x at 987. Here, the incident occurred at the front entrance of a public racing venue. Ex. B, App. 0014–0020. Several bystanders were present. *Id.*; Ex. C, App. 0021–0023, 0030; Ex. D, App. 0032–0033. The officers were in the middle of an active investigation at the time. Ex. C, App. 0021–0023. Plaintiff shouted his profanity in the presence of those bystanders, none of whom had

any part in his dispute. Ex. C, App. 0021–0023, 0030; Ex. D, App. 0032–0033. Those circumstances gave the officers an objectively reasonable basis to perceive a risk of an immediate breach of the peace that was absent from the version of events considered in *Brooks*. *Brooks*, 639 F. App'x at 987.

76. The relevant question is whether every reasonable officer would have understood that arresting Plaintiff was unlawful despite several circumstances. *Brooks* does not answer that materially different question in Plaintiff's favor. *Brooks*, 639 F. App'x at 987. Because clearly established law must address the particular circumstances confronting the officers, Plaintiff cannot prevail by describing the case at the generalized level of an arrest "for cursing." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

77. Accordingly, a reasonable officer could conclude that Jowers was committing disorderly conduct, and Grant and Guzman are entitled to qualified immunity on Jowers's unlawful-arrest claim.

**CONCLUSION**

78. If a plaintiff fails to establish a constitutional claim, the government official is entitled to qualified immunity. *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). Here, Defendants have demonstrated that they are entitled to qualified immunity because Plaintiff cannot overcome that defense.

79. Moreover, Defendants have demonstrated that they did not use excessive force in violation of the Fourth Amendment. Even if they did, no clearly established law as of April 12, 2025, would have informed Defendants that their conduct violated the Constitution.

80. Defendants have also demonstrated that they had probable cause to arrest Jowers for disorderly conduct and therefore did not violate the Fourth Amendment. Even if probable cause were lacking, no clearly established law as of April 12, 2025, would have informed every

reasonable officer in Defendants' position that arresting Jowers under these circumstances violated the Constitution.

81. Accordingly, the Court should grant summary judgment to Defendants.

**PRAYER**

WHEREFORE, Defendants respectfully ask this Court to grant them summary judgment on all claims asserted against them based on their entitlement to qualified immunity and to award any other relief to which they are entitled.

Respectfully submitted,

SPROUSE SHRADER SMITH PLLC
Blair Saylor Oscarsson, SBN 24056073
blair.oscarsson@sprouselaw.com
Evan A. Johnson, SBN 24134463
evan.johnson@sprouselaw.com
701 S. Taylor, Suite 500
P. O. Box 15008
Amarillo, Texas 79105-5008
Tel: (806) 468-3300 / Fax: (806) 373-3454

**ATTORNEYS FOR DEFENDANTS SERGEANT NICHOLAS GRANT AND DEPUTY ANTONIO GUZMAN**

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2026, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

**ATTORNEYS FOR PLAINTIFF**
James P. Roberts
Scott H. Palmer
PALMER PERLSTEIN
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
james@palmerperlstein.com
scott@palmerperlstein.com

/s/ *Blair Saylor Oscarsson*
Blair Saylor Oscarsson